ELIOT H. BENTON, ADMINISTRATOR, C. T. A., (ESTATE OF CHARLES L. BENTON) *vs.* MARTHA L. BENTON DUDLEY ET AL.

Third Judicial District, Bridgeport, April Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 21st—decided June 1st, 1931.

*John J. Sullivan, Jr.,* for the plaintiff.

*Ellsworth B. Foote,* with whom, on the brief, were *David E. Fitzgerald* and *David E. Fitzgerald, Jr.,* for the defendant Martha L. Benton Dudley.

*David L. Daggett,* with whom was *Huntington T. Day,* for the defendant Ruth Benton Parr.

*Harrison Hewitt* and *Mary E. Manchester,* for the defendants Edward Latham Benton and Harrison Hewitt, his guardian *ad litem.*

*Walter J. Walsh,* for the defendant Eliot H. Benton.

BANKS, J. Charles L. Benton died April 4th, 1928, leaving a will dated September 29th, 1927. He left a widow, Martha L. Benton, who has since remarried, and whose name is now Martha L. Benton Dudley, and an adopted son, Charles Edward Latham Benton, who was by birth the son of a sister of the testator's wife. At the time of the making of his will Charles L. Benton had two brothers, Edward W. Benton and

Herbert Benton. Edward W. Benton never married and died March 24th, 1928, leaving a will in which he gave all his property to Charles L. Benton. Herbert Benton died February 20th, 1929, leaving two children, Eliot H. Benton and Ruth Benton Parr, as his only heirs at law. At the time he made his will Charles L. Benton was eighty-one, his wife thirty-seven, an adopted son ten and his brother, Edward, sixty-seven. He then owned an undivided one-half interest in eight pieces of land in Guilford. Edward W. Benton owned the other half interest in this real estate, and the two brothers occupied a portion of the property as a farm, and owned in common the live stock and farming tools upon the farm. They also owned each an undivided interest in a note of $2500 secured by a mortgage on real estate in Kent. When Charles L. Benton made his will there were accounts in a number of savings banks which stood in the names of Edward W. Benton and Charles L. Benton, payable to either or the survivor, the money in which was derived from the sale of real estate owned by them jointly. In addition to the property which he owned jointly with his brother Edward, the testator owned an undivided one-half interest in three pieces of property in Kent, the other half interest in which was owned by his wife, and also had an account in the New Haven Savings Bank amounting to $1041.77 at the time of his death.

The questions upon which advice is desired are numerous and detailed, and involve the construction of the entire will with the exception of the first two articles, and the will, with the exception of those articles, is quoted in the footnote.

"Third. I wish my interest in all undivided real Estate, money in Banks if any; to go to my wife Martha L. Benton shes to have the life use of the same with the right to dispose of any real Estate

The ultimate problem here presented is the determination of the interests which the testator's widow, his adopted son and the heirs of his brother Herbert, respectively, take under his will. The solution of the problem is to be sought of course in ascertaining what the testator intended each of them to receive. The will was obviously drawn by the testator himself or by someone totally unacquainted with legal terminology. Some of its provisions are seemingly inconsistent with others, some susceptible of several constructions, and it is a matter of no little difficulty to get at what the testator intended to express in the language which he used. An analysis of the entire will, read in the light of the circumstances which surrounded the testator when it was written, will, we think, reveal the general scheme of the will and the nature of the interest which he intended each of the objects of his bounty should have in his property. The bulk of the testator's property at the time the

only with the knoledge and consent of Edward W. Benton if he is liveing.

"4th. If Charles Edward Latham Benton out lives us all he shall have all property left to use or do as he or his Guardian may think best for his support. Or support of his family if he has any.

"5th. But none of the Benton property shall go to his relatives by Birth.

"6th. My interest in live stock and Farming tools shall go to Edward W. Benton

"7th. If my wife Martha L. Benton shall out live Edward W. Benton and my self my wife Martha L. Benton shall have the right to use or dispose of any of the Benton property as she may think best for her own use or for the benefit of Charles Edward Latham Benton. As long as my wife lives

"8th. If after the death of Charles Edward Latham Benton and Edward W. Benton and my wife and my selfe and all expenses paid. If there is any thing left it shall go to my Brother Herbert's Benton's heirs.

"9th. If Edward W. Benton shall outlive my wife Martha L. Benton Chas. Edward Latham Benton and myself he shall have all property to do as he shall think best with"

will was drawn was owned by him jointly with his brother Edward. They owned together the Guilford real estate, including the farm which they jointly occupied, and the live stock and farming tools upon it. The deposits in the several savings banks (except that in the New Haven Savings Bank) were derived from real estate owned by them jointly and stood in their joint names, and they each owned an undivided interest in a mortgage note of $2500. We think that in the use of the phrase "Benton property" in the seventh article of his will the testator intended to include all the property, real and personal, which he and his brother Edward owned jointly. The joint ownership of this property and the close association of the two brothers in its ownership and use seems to earmark it as Benton property, and make it quite natural for the testator to so refer to it in his will. We find nothing in the will or in the stipulated facts which would indicate that the testator was here referring to real estate only, or to any other portion of his estate than that which he and his brother had owned jointly, or which was used in connection with the Benton farm, and which he would naturally think of as "Benton property." The bequest of the "Benton property" to the wife if she "should out live Edward W. Benton and my self" also indicates that the property he then had in mind was that in which his brother Edward had a half interest. The testator and his brother Edward owned jointly all the live stock and farm tools with the exception of a tractor purchased after October 1st, 1927. While this tractor was not a part of the jointly owned property, it was a part of the equipment of the farm which was "Benton property," and we think the testator intended to include it in the property so designated.

Edward owned no property except that in which

his brother Charles had a half interest. He died a few days before Charles, leaving all his property to the latter. The will of Charles speaks from his death and is to be construed as conveying the real estate owned by him at that time. General Statutes, § 4875. The gift of his "interest in all undivided real estate," in the third article of the will, as well as that of the "Benton property," in the seventh article, includes the estate which he acquired from Edward upon the latter's death.

The provisions for the wife of the testator appear in the third and seventh articles of the will. In the third article she is given the life use of all undivided real estate and money in banks. This gave her a life interest in all the real estate owned by the testator at the time of his death and all the money in banks, but gave her no power to use the principal of the money in banks. The provision in this article giving her the right to dispose of any real estate only with the knowledge and consent of Edward if he is living, gave her merely a power of sale which, if exercised during Edward's lifetime, could only be done with his consent.

The will left the live stock and farming tools to Edward and the entire estate if he should survive the testator's wife and adopted son. Since he died before Charles, the provision made in the seventh article of the will for the testator's wife in case she should outlive Edward became effective upon the testator's death. This article provides that in that event she "shall have the right to use or dispose of any of the Benton property as she may think best for her own use or for the benefit of Charles Edward Latham Benton. As long as my wife lives." Having already, in the third article, given his wife a life interest in his real estate and money in the bank, it was apparently his intention, in the seventh article, to give her a fur-

ther interest in the "Benton property" after the death of Edward who owned the other half of it. That he did not intend her to have the fee is apparent from the last clause, "As long as my wife lives." We construe this article of the will to give to the wife the life use of the "Benton property" with power to use such portion of the principal as may reasonably be necessary for her support and that of the adopted son, but not to require her to use any portion of it for his support. Since the live stock and farming tools are included in the "Benton property" and are personal property which by its nature is consumed by use, the wife takes the absolute title to them under the provisions of General Statutes, § 4896. The wife therefore receives under the will (a) the live stock and farming tools, (b) a life interest in the undivided real estate in Kent and the money in the New Haven Savings Bank, and (c) a life interest in the remaining property of the testator comprising what he has designated as the "Benton property," with power to use such portion of the principal as she may reasonably deem necessary for the support of herself and her adopted son.

The fourth article of the will provides that "if Charles Edward Latham Benton outlives us all he shall have all property left to use or do as he or his Guardian may think best for his support. Or support of his family if he has any." We construe this article to give to the adopted son a life use in all the property of the testator, except the live stock and farming tools, subject to the life use of the widow, and with the power to use such portion of the principal as he may reasonably deem necessary for his support and the support during his lifetime of his family if he has any.

The contention that under this article Charles Edward Latham Benton takes a remainder interest in

fee of all the property does not seem to us to be fairly sustainable from the language used, which indicates the creation of a life estate with power to use the principal for necessary support. The construction also receives support in the fact that Charles Edward was not the testator's own son, and from the provision in the fifth article that none of the Benton property should go to his relatives by birth, who would be those related to him by blood and not of the Benton blood, also by the provision in the eighth article that, "If there is any thing left" after the death of the son, brother and widow, it shall go to Herbert Benton's heirs, and that in the ninth article giving his entire estate to his brother Edward if he should outlive the widow and son.

The heirs of Herbert Benton, who are his two children, Eliot and Ruth, take vested remainder interests in the entire estate subject to the life estates of the widow and the adopted son, and their exercise of the powers thereunder as hereinbefore stated.

The questions propounded are too numerous and detailed to make advisable a categorical answer to each. We deem our discussion sufficient for the guidance of the trial court in entering judgment in the case and remand it that this may be done.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.